UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIERAN JOSEPH LIEBL, INC. d/b/a ROYAL OAKS DESIGN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BON TON BUILDERS, INC. et al.,<br><br>Defendants. | Case No. 1:23-cv-01205-KM-DFB<br><br>Hon. Karoline Mehalchick |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION TO COMPEL AND FOR SANCTIONS**

Per this Court's March 14, 2024 Order (Doc. #56), Plaintiff Kieran Joseph Liebl, Inc. d/b/a Royal Oaks Design, Inc. ("ROD") files this brief in support of its motion to compel and for sanctions (Doc. #55).[1]

## Introduction

As detailed in ROD's discovery letters to the Court (Doc. ##30, 40, 43, 55), Defendants Bon Ton Builders, Inc. ("BTB") and Tony Forbes ("Forbes") have consistently failed to timely and diligently provide required discovery in this case. Despite ROD's Second Set of Interrogatories being served on November 27, 2023 (making responses due December 27, 2023), defendants *still* have not responded to

---

[1]   This Court's order treats ROD's March 13, 2024 discovery conference letter as a motion.

1

them, nor has their counsel responded to numerous inquiries about them.

More importantly, despite ROD serving discovery on August 18, 2023 seeking critical information and documents about Defendants' use of ROD's materials, Defendants nevertheless withheld thousands of pages of unquestionably responsive (and often highly incriminating) documents and information for over six months. This long delay is especially egregious given that ROD's counsel pointed out in writing on October 26, 2023 that specific categories of documents unquestionably existed but had not been produced (*see* Doc. #30-2 pp.9-11).

Now, after ROD filed its motion and a week after this Court ordered briefing, Defendants have produced over 50,000 pages of responsive documents.[2] While ROD is in the process of reviewing this mountain of discovery (which should have been produced in September), what ROD has already found makes it undeniable that Defendants sat on responsive, incriminating evidence for months, to ROD's prejudice. They confirm that Defendants either (1) had not diligently searched for responsive documents, or (2) deliberately withheld them (*see* Doc. #43). Further, while the Court need not address it at this time, it is also clear that Defendants did not implement a "litigation hold" on critical website analytics and metadata, ***despite their counsel confirming in writing that Defendants had been instructed to***

---

[2]   Defendants had promised to remedy this delay by February 11. *See* Doc. #44.

***implement a litigation and preserve that evidence.*** *See* Doc. #40-4.

ROD does not ask for sanctions lightly. But when parties simply "prefer not to" answer difficult Interrogatories, and have spent the last six months essentially refusing to deal promptly with their discovery obligations (which has already caused three extensions of deadlines in this case), Rule 37(a)(5)(A) sanctions are warranted.

**Procedural Background and Statement of Facts**

This case involves claims for copyright infringement and violations of Section 1202 of the Digital Millennium Copyright Act ("DMCA"), arising from BTB's piracy of architectural works and technical drawings owned by ROD, as well as BTB's construction of at least three houses that are derivative of ROD designs.

By way of example, here are ROD's marketing floorplans for its "Mistwood Farms" architectural work (available online here):



Here is what BTB was using on its website and other marketing materials:

3



This is a duplicate of ROD's work, except that ROD's copyright notice (lower left corner of first floor plan; upper left of second floor plan) has been removed, and BTB changed the name of the design.

BTB's piracy was not an isolated instance or the ignorant act of a rogue employee, but was an intentional, widespread practice directed by BTB's owner, Forbes. BTB's former employee Devon Brogan testified in her deposition that she warned that what they was doing was illegal, but he nevertheless directed it continue:

Q. Okay. Did Mr. Forbes ever tell you to remove the copyright notices from these designs from other companies' websites that he told you to capture?
A. Yes.
Q. Did he tell you why he wanted you to do that?
A. No.
Q. Did that make you -- did that give you any pause?
A. Yes.

Q. Why?

A. Because they're copyrighted.

Q. And it -- did you not think it would be right to remove a copyright notice?

A. I would think most people would say that's not right.

Q. ***Did you ever tell Mr. Forbes that you thought it was copyright infringement?***

A. ***Yes.***

Q. And what is it that you were telling him that you thought was copyright infringement?

A. Taking the copyright off is infringement.

Q. ***What did he say when you told him that?***

A. ***It was -- I don't remember his exact words. "Just do it."***

Q. ***He made it clear that you were still supposed to do what he said and to remove the copyright notice?***

A. ***He was my boss. I did what he asked me to.***

Brogan deposition, pp. 31-33 (emphasis added; excerpts at Doc. #40-1).[3]

Nor was BTB's piracy limited to its advertising materials. Despite BTB denying for months that the plans for the "Gilligan Residence," "Shaul Residence," "Pickering-Warren Residence," and "Kirsch Residence" were derived from ROD's works, evidence finally produced after this Court's March 14, 2024 order plainly shows otherwise. The "Gilligan Residence" plans were based on BTB sending its

---

[3] Ms. Brogan's testimony is from a similar case in this Court (*Donald A. Gardner Architects v. Bon Ton Builders*, No. 1:23-cv-01313-JPW, which involves BTB's piracy of over 60 different architectural works).

draftsman (Fetters[4]) the following:



*See* Exhibit 1.[5]  Like the "Knoxlyn" design shown above, what BTB sent its draftsman – and what he then copied and used – is just a pirated copy of a BTB architectural work (in this case, ROD's "Silver Bell Ranch" design; copy available online here) with ROD's copyright notice removed:

---

[4]  As detailed in ROD's January 29, 2024 letter (Doc. #43), Defendants withheld all information showing Fetters' existence and involvement for months until January 12, 2024, when in response to Magistrate Judge Bloom's order (Doc. #34) they produced the various invoices associated with the houses in question.  Buried in this mass of invoices were some invoices from Fetters.  The "smoking gun" materials attached as Exhibits 1-3 were produced on March 22, 2024, as part of the huge production occurring after this Court's March 14 order.

[5]  The "Kirsch Residence" is a modified version of the "Gilligan Residence," thus also making it a derivative of ROD's Silver Bell Ranch design.

6



Similarly, what was the origin of the "Pickering-Warren Residence"? Again, here's what BTB sent its draftsman to draw up:



*See* Exhibit 2 attached.   Here is what BTB sent Fetters for the "Shaul Residence":

7



*See* Exhibit 3.  Again, these are pirated copies of ROD's marketing materials for its "Misty Falls" architectural work (copy available online here), with ROD's copyright notices removed and the title of the work changed:



As detailed in ROD's January 24 letter requesting a discovery conference (Doc. #40), ROD discovered BTB's piracy in February 2023, and sent BTB a cease

8

and desist letter shortly thereafter. BTB ignored it and continued to display and reproduce ROD's works. After the undersigned counsel was engaged, a renewed cease and desist letter was sent on April 4, 2023 (*see* Doc. #40-2). That letter and subsequent communications also warned BTB of the need to implement and maintain a litigation hold, ***and specifically mentioned the need to preserve the BTB website analytics***.⁶ *See id.*, p.4; *see also* Doc. #40-3 (April 6, 2023 e-mail). BTB's counsel (Arthur Becker) responded:

> As you requested, the appropriate parties have been instructed to implement a "litigation hold" to preserve electronically-stored evidence ***such as website analytics and metadata on webpage files***, and to create a forensic copy of any content on the website that will be deleted or modified.

*See* Doc. #40-4 (April 6, 2023 letter; emphasis added).

As detailed in ROD's November 16, 2023 letter to the Court (Doc. #30), Defendants were over a month late in responding to ROD's original discovery requests, and what they did produce did not include many categories of requested materials, including website analytics, metadata, and forensic copies of what was deleted or modified. *See* Doc. #30-2 (chronology). The only website analytics ROD

---

⁶ Website analytics are the data records a website's software automatically generates regarding visitors to various pages on a website, and would show how many times a particular webpage distributed its contents to visitors over as certain period of time. This data is crucial to DMCA § 1202 claims, because each such distribution can be a separate and distinct DMCA § 1202 violation.

was able to obtain were via a third party subpoena to former BTB webmaster Adam Atwell, and those were limited to a few days in October 2023 -- apparently because no one had turned off the "auto-delete" function of the website's analytics software or otherwise preserved that data as BTB's attorney represented was being done.

Defendants had no coherent explanation for why this critical information was not being produced, and whether or not the represented "litigation hold" on such evidence was ever actually implemented. Rather than bring this matter to the Court, ROD instead served Requests for Admission and its Second Set of Interrogatories on November 27, 2023. *See* Exhibits 4 & 5, attached. As the Court will observe, ROD's second set of interrogatories require Defendants to explain why they did not admit requests for admission (including identifying the evidence Defendants contend supports their positions), and specifically asked why the website analytics, metadata, and forensic copies BTB's counsel explicitly represented on April 6, 2023 were being preserved had not been produced.

Responses to ROD's Second Set of Interrogatories were due December 27, 2023. Despite repeated inquiries from ROD's counsel (*see* e-mails attached as Exhibit 6, as well as ROD's January 24 and March 13, 2024 letters to the Court (Doc. ##40 (p.7), 55 (p.6))), ***Defendants have never answered these Interrogatories***.

## Statement of Questions Involved

1. Should Defendants be ordered to answer ROD's Second Set of Interrogatories, and be sanctioned for their months of delay in doing so?

   **SUGGESTED ANSWER: YES**

2. Should Defendants be sanctioned for failing to diligently search for and produce responsive documents and ESI?

   **SUGGESTED ANSWER: YES**

## Argument

**I.  Standard for Sanctions Under Rule 37.**

The standard for sanctions under Rule 37(a)(5)(A) is well-settled:

> Pursuant to Rule 37, a party may move to compel discovery, and for the award of appropriate sanctions, when, inter alia, another party fails to make a disclosure, answer, or response or when such a party makes an evasive or incomplete disclosure, answer, or response. See generally id. "If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Vega v. Nestor, No. 4:06-CV-02287, 2009 WL 10715694, at *3 (M.D. Pa. June 5, 2009). "However, 'the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was

11

substantially justified; or (iii) other circumstances make an award of expenses unjust.'" *See id.* n.10 (quoting Rule 37(a)(5)(A)).

Further, "[t]he decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009).

## II. Defendants Must Answer ROD's Second Set of Interrogatories, and Have No Excuse for Not Doing So.

Defendants' answers to ROD's Second Set of Interrogatories were due ***three months ago***. Defendants have not answered them, nor moved this Court for an extension of time or a protective order, nor has their counsel responded to repeated written inquiries regarding this failing.

There is no excuse for this delay. Defendants should be ordered to respond in full to ROD's Second Set of Interrogatories immediately. Sanctions under Rules 37(a)(5)(A) (fees and expenses) and 37(c)(1)(B) (inform the jury) are also warranted.

## III. Defendants Have Impermissibly Delayed Disclosing and Producing Incriminating Evidence.

As detailed above and in ROD's prior submissions to the Court, it is now beyond peradventure that for many months Defendants either deliberately withheld "smoking gun" evidence (such as the copies of ROD works it sent to Fetters for the

Gilligan, Shaul, and Pickering-Warren Residences, as well as Fetters' identity, existence, and role), or else did such a poor job of searching for responsive documents that it amounted to no real search at all. This failing is even more pointed given that counsel for ROD specifically pointed out these deficiencies in writing in October, but as of March 6, 2024 – over four months later – Defendants' position was that they *still* could not say if any additional responsive documents even existed. *See* Exhibit 7.

Six weeks after the February 1 discovery conference, Defendants continued their interminable delays and would not commit to a date certain for the production. ROD thus asked for a third discovery conference. After this court ordered briefing on a sanctions motion, a week later Defendants finally produced over 50,000 pages of documents that they claim they somehow did not know of before.

This delay of *over six months* in producing critical, highly incriminating documents has prejudiced ROD, and warrants sanctions. By the time ROD learned of Fetters' existence (and promptly served him with a document subpoena), Fetters had already deleted most of his e-mails with BTB. *See* Exhibit 8. Had Defendants timely identified Fetters and produced even a fraction of its communications with him, ROD likely could have been able to obtain some of that now-deleted evidence from Fetters. Similarly, by withholding all documents relating to the transactions with Gilligan, Shaul, or Pickering-Warren, Defendants made it impossible for ROD

13

to timely assess their roles in this case (conveniently providing the materials identifying them over two months after the pleading amendment deadline).

And of course ROD has had to delay starting depositions in this case, as taking depositions in a copyright case without the relevant documents is a fool's errand. For these reasons, "[l]ast-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *see also Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (determining that party was prejudiced by not having access to documents for depositions and "to conduct effective discovery and adequately prepare for trial").

Rule 37(a)(5)(A) is clear: sanctions **must** be imposed if the requested discovery is made after relief is sought. Nor are any of the exceptions to sanctions implicated. The record is clear that counsel for ROD has spent months trying to obtain the requested discovery, only to be met with a string of delays, missed deadlines, excuses, and obfuscation. There is no justification for what is either sanctionable laziness or the intentional withholding of incriminating evidence for months. Indeed, courts often infer bad faith from a party's intentional withholding of evidence.[7] *See, e.g., Burgess v. Costco Wholesale Corp.*, No. 4:10-1678-RBH-

---

[7] "[B]ad faith is an important factor" but "is not required for sanctions." *Cox v. Deal*, No. CIV. 2:09-CV-2715, 2011 WL 3418397, at *5 (D.S.C. Aug. 3, 2011).

TER, Doc. #57, at *5 (D.S.C. Jan. 31, 2012) (holding that plaintiff acted in bad faith by failing to provide documents responsive to defendant's requests).

Additionally, Defendants' conduct warrants additional sanctions under Rule 37(c)(1), such as informing the jury of Defendants' withholding of incriminating evidence.  *See* Fed. R. Civ. P. 37(c)(1)(B).

ROD leaves it to the Court's discretion as to what form the sanctions should take, but it is imperative that the Court send Defendants a message: the Rules of Civil Procedure are not merely suggestions, and ignoring them yields consequences.

## Conclusion

ROD prays that the Court enter an order compelling Defendants to answer Plaintiff's Second Set of Interrogatories, in full, within three days, for Rule 37(a)(5)(A) and 37(c)(1)(B) sanctions as the Court deems appropriate, and for such other further relief to which it may be justly entitled.

Dated:  March 28, 2024

| | |
|---|---|
| Justin G. Weber (PA 89266) | */s/ Louis K. Bonham* |
| Adam R. Martin (PA 321257) | Louis K. Bonham (TX 02597700) |
| TROUTMAN PEPPER | (admitted *pro hac vice*) |
| HAMILTON SANDERS LLP | OSHA BERGMAN WATANABE |
| 100 Market Street, Suite 200 | & BURTON LLP |
| Harrisburg, PA  17101 | 1100 Louisiana Street, Suite 4900 |
| 717.255.1155 | Houston, Texas 77002 |
| justin.weber@troutman.com | 713.228.8600 |
| adam.martin@troutman.com | bonham@obwb.com |

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2024, a true and correct copy of the foregoing instrument and attachments have been served on all counsel of record via the Court's ECF system.

*/s/ Louis K. Bonham*
Louis K. Bonham