# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIERAN JOSEPH LIEBL, INC. d/b/a ROYAL OAKS DESIGN, INC., | CIVIL ACTION NO. 1:23-CV-1205 |
| Plaintiff | JURY TRIAL DEMANDED |
| v. | |
| BON TON BUILDERS, INC., and TONY R. FORBES, | |
| Defendants | |

## DEFENDANTS BON TON BUILDERS, INC. AND TONY R. FORBES' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES

**AND NOW,** come the Defendants, Bon Ton Builders, Inc. and Tony R. Forbes, by and through their undersigned attorneys, Johnson, Duffie, Stewart & Weidner, P.C., and file this Brief in Opposition to Plaintiff's Motion to Compel and For Sanctions and aver as follows:

### I.    FACTS AND PROCEDURAL HISTORY

On July 20, 2023, Plaintiff, Royal Oaks Design, Inc., filed a Complaint against Defendants Bon Ton Builders, Inc. and Tony R. Forbes (hereinafter referred to collectively as "Defendants") alleging various copyright infringement claims arising out of certain architectural works Plaintiff claims ownership of and further claims Defendants infringed upon.  (Doc. 1). On January 23, 2024, Plaintiff, Kieran Joseph Liebl, Inc. d/b/a Royal Oaks Design, Inc., filed its First Amended Complaint against Defendants. On

1

February 6, 2024, Defendants filed their Answer with Affirmative Defenses. The totality of Plaintiff's claims is that five of its home designs were allegedly on Defendants' website for a short period of time and that from those designs, Bon Ton allegedly constructed three houses. (Doc. 47).

Relevant to Plaintiff's instant Motion is the history of discovery conducted in this matter to date and, specifically, Plaintiff's inaccurate characterization of that discovery. Pertinently, Defendants have responded to multiple sets of interrogatories and requests for production of documents, as well as requests for admissions, propounded by Plaintiff. Defendants have produced thousands of pages of documents including all as-built plans for homes constructed since 2021, profit and loss summaries with supporting, detailed cost reports and original invoices for the three (3) constructed homes at issue in this case. Despite this production, on January 24, 2024, Plaintiff requested a discovery conference with this Honorable Court claiming that Defendants have engaged in improper, obstructionist, and unethical conduct, as well as seeking to compel metadata from the Defendants' website and additional technical documents related to the three (3) homes at issue. (Doc. 40).

On February 1, 2024, following the discovery conference, the Honorable Daryl F. Bloom entered an Order deferring Plaintiff's requested relief with respect to electronically stored information (ESI) until the deposition of Adam Atwell (third-party website creator) was conducted, and ordering Defendants to answer Plaintiff's revised Request for Admission No. 3 and engage in further search of documents with respect to the three (3) homes at issue in this case. (Doc. 46). In addition, it was at this meeting with the Court that undersigned counsel explained that Defendants would be retaining,

2

at substantial expense, an ESI expert to conduct a comprehensive search of all materials in the possession of Defendants to ensure full transparency and preclude further claims by Plaintiff's counsel that documents were being hidden or that searches were inadequate and being conducted in bad faith.

Following the entry of the discovery Order on Feb. 1, 2024, Defendants provided supplemental responses to Plaintiff's revised Request for Admission No. 3. Additionally, as referenced above, Defendants engaged an ESI expert to perform searches upon Defendants' computer system and Defendant Forbes' cell phone. This search was performed based upon discreet search terms provided by Plaintiff in this case and the Plaintiff in the *Gardner v. Bon Ton* case, which involves similar allegations and on which Plaintiff's attorney is acting as co-counsel. Defendants accepted every single one of Plaintiffs' requested search terms.

All relevant documents located by the ESI expert have been produced to Plaintiff. Yet now, in its brief, which should be filed under the category of "no good deed goes unpunished," Plaintiff's counsel argues that Defendants should be sanctioned for allegedly failing to diligently search for these documents on their own. This argument obfuscates the clear facts of this case. In particular, Defendant Bon Ton Builders has fewer than ten (10) employees and no IT department. Bon Ton Builders' principal, Tony Forbes, is not technologically savvy. Undersigned counsel and private counsel for Bon Ton have been working diligently, largely with one administrative assistant, to produce the voluminous discovery requested in this case. Nonetheless, despite being a small home builder with no IT department, Defendants provided all that they could in the form of all as-built plans for homes constructed since 2021, profit and loss summaries with

supporting, detailed cost reports and original invoices for the three (3) constructed homes at issue in this case.

However, when Plaintiff's counsel claimed that Defendants had failed to properly identify one Dave Fetters, who is a third-party draftsman for Bon Ton whose name came up in Defendants 504(b) production, undersigned counsel decided it was necessary to get expert assistance to satisfy everyone that there would be no "gaps" in discovery. When undersigned counsel told Plaintiff's counsel that he intended to retain an expert for that purpose, Plaintiff's counsel was pleased. Yet now, he complains that the ultimate production was too voluminous and imputes nefarious motivations to Defendants because documents should have been located and produced sooner.

Despite Plaintiff's constant accusations of sanctionable conduct which literally began prior to suit being filed in this case (at which time Plaintiff's counsel suggested that undersigned counsel, who had just been retained in the case, should consider skipping his family vacation in order to ensure the turnover, pre-suit, of construction documents by a date certain) and which have not relented since, there have been no sanctionable actions committed by the Defendants or counsel. Indeed, undersigned counsel advised attorney Bonham when he threated this sanctions motion following the conference with Judge Bloom – in which his prior sanctions request was not granted and he knew that Defendants were conducting an exhaustive ESI search through a third-party expert using Plaintiffs' (Royal Oaks and Gardner) own search terms – that it was he who was abusing the discovery process. Accordingly, undersigned counsel believes that Defendants are entitled to an award of fees for having to respond to this latest salvo by Plaintiff's counsel, which reiterates essentially the same arguments

4

presented to Judge Bloom, perhaps in the hope that a new judge will not be cognizant of what has already transpired.

Significantly, despite the Feb. 1, 2024 Order deferring Plaintiff's requested relief with respect to electronically stored information (ESI) until the deposition of Adam Atwell was conducted, Plaintiff has made no attempt to take Mr. Atwell's deposition. It is unclear whether Plaintiff read the Feb. 1, 2024 Order (Doc. 46) or is simply ignoring it because Plaintiff accuses Defendants of failing to implement a "litigation hold" and preserve metadata multiple times in its Brief (despite knowing that Adam Atwell is the relevant witness as to Defendant's website and metadata and what was and could have been preserved at the time the website was created). Thus, to the extent Plaintiff is seeking sanctions in its instant Motion with respect to failure to preserve metadata, Plaintiff has failed to comply with an Order of this Court to conduct needed discovery and the only sanctions which are warranted should be imposed upon Plaintiff for forcing the parties to address the same claims which Judge Bloom explicitly held could not be resolved absent needed testimony from Atwell.

Plaintiff also seeks sanctions against Defendants for failing to respond to Plaintiff's Second Set of Interrogatories. By way of clarification, Plaintiff's Second Set of Interrogatories were served on or about November 28, 2023 simultaneously with Plaintiff's Requests for Admissions. Plaintiff's Second Set of Interrogatories asks only that Defendants identify and explain the reasons why any Requests for Admission were denied and to explain why no additional website analytics have been produced. Defendants answered Plaintiff's Requests for Admissions on December 27, 2023. *See*, Defendants' Answers to Plaintiff's First Request for Admission, attached as **Exhibit A**.

5

Defendants Answers to Plaintiff's First Request for Admission were thorough and fully explained the reasons why each request was denied, including an explanation on the litigation hold Defendants utilized in order to preserve website data.[1]  Put simply, Plaintiff's Second Set of Interrogatories were fully answered in Defendant's Answers to Plaintiff's First Request for Admission.  Plaintiff's counsel has a complete understanding of Defendants position as it relates to meta data and its preservation.  Plaintiff's counsel does not like the answer and so continues to perseverate on these issues – again: while assiduously avoiding taking the deposition of the one witness identified by Judge Bloom who can clarify the record, one way or another, on what occurred when the Bon Ton website was created.  Undersigned counsel is left to deduce that Plaintiff prefers to keep lobbing allegations of improper conduct and serial motions for sanctions based on bald allegations, as opposed to hearing testimony which might fatally undermine those claims.  No sanctions are warranted in this matter.

    This Brief is offered in opposition to Plaintiff's Motion.

---

[1] Following the Feb. 1, 2024 Order (Doc. 40), Plaintiff submitted a Revised Interrogatory No. 3 which Defendants answered. See, Defendants Answer to Plaintiff's Revise Interrogatory No. 3, attached as **Exhibit B**.

## II. QUESTIONS PRESENTED

**A.    SHOULD PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS BE DENIED PURSUANT TO F.R.C.P. 37(a)(5)(A)(ii) AND (iii) BECAUSE DEFENDANTS' DISCOVERY RESPONSES ARE SUBSTANTIALLY JUSTIFIED AND OTHER CIRCUMSTANCES MAKE AN AWARD OF EXPENSES UNJUST?**

**SUGGESTED ANSWER: AFFIRMATIVE.**

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 37(a)(5)(A)(ii) and(iii) provides, in pertinent part:

"If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing). If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
(iii) other circumstances make an award of expenses unjust."

F.R.C.P. 37(a)(5)(A)(ii)-(iii).

With respect to whether a party's response was substantially justified, that threshold is met "when a reasonable person is satisf[ied] that parties could differ as to whether the party was required to comply with the disclosure request." Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002). Additionally, a party is substantially justified in failing to produce required discovery when a reasonable person would conclude that parties could differ as to whether disclosure was required. Lightstyles, Ltd. v. Marvin Lumber & Cedar Co., 2015 U.S. Dist. LEXIS 87049, at *4 (M.D. Pa. 2015).

Moreover, "The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." Tolerico, 205 F.R.D. at 175-176.

The other exception, "when other circumstances make an award of expenses unjust," allows a court to take into account equitable considerations. Taylor v. United States, 815 F.2d 249, 252 (3d Cir. 1987).

### IV. ARGUMENT

#### A. Defendants' Responses To Plaintiff's First Request For Admission Were Substantially Justified And Answered Plaintiff's Second Set of Interrogatories.

From the outset, Plaintiff has not objected to Defendants' Answers to Plaintiff's First Request for Admission. Plaintiff also fails to make mention of the substantive responses and reasons for denial included in Defendants' Answers to Plaintiff's First Request for Admission. Instead, Plaintiff moves to compel responses to its Second Set of Interrogatories and seeks sanctions for the same. Plaintiff's Second Set of Interrogatories were served in conjunction with Plaintiff's First Request for Admission. These interrogatories seek the basis for any of Defendants' denials to Plaintiff's First Request for Admission, as well as questions about the litigation hold implemented by Defendants and preservation of website metadata. These questions were substantively answered in Defendants' Answers to Plaintiff's First Request for Admission. Plaintiff has had these answers since December 27, 2023. Plaintiff's argument in support of an order compelling Defendants to provide responses to its Second Set of Interrogatories (and sanctions) completely neglects the substance of Defendants' Answers to Plaintiff's First Request for Admission and instead seeks relief based on nothing more than form. It is respectfully submitted that this is not the standard applied by Courts in the Third Circuit.

Moreover, a reasonable person would conclude that parties could differ as to whether disclosure was required in this instance because Defendants made their substantive disclosures answering Plaintiff's Second Set of Interrogatories, albeit provided them in their Answers to Plaintiff's First Request for Admission. Accordingly, Defendants' responses were substantially justified in this matter and no sanctions are warranted.

### B. Defendants Have Not Impermissibly Delayed Disclosing and Producing Incriminating Evidence.

Plaintiff argues, in conspiratorial tone but absent any factual support, that Defendants allegedly withheld "smoking gun" evidence. To repeat: these claims all arise against a backdrop in which Defendants have voluntarily retained, at great expense, to ensure production of every shred of responsive documents using Plaintiffs' designated search requests. It is a facially bizarre claim, then, to say that Defendants are playing hide the ball. Nothing could be further from the truth in this matter. Defendants, despite not being at all equipped to deal with the kind of discovery requests involved in a federal copyright case, conducted, as best as they could, a diligent search for documents responsive to Plaintiff's voluminous discovery requests. This search yielded thousands of pages of all as-built plans for homes constructed since 2021, profit and loss summaries with supporting, detailed cost reports and original invoices for the three (3) constructed homes at issue in this case.

Plaintiff, still unsatisfied with the production, then sought court intervention. By Order dated Feb. 1, 2024, this Court ordered that "[t]he defendants shall engage in a

further search for documents responsive to the plaintiff's requests for documents regarding the Gilligan, Shaul, Pickering-Warren, and Fetters projects. The plaintiff shall provide a list of relevant search terms to the defendants that it believes will aid in producing relevant documents." (Doc. 46). This is precisely what occurred.

Following the entry of the Feb. 1, 2024 Order, Defendants engaged an ESI expert to conduct a search for responsive documents on Defendants' computers and Defendant Forbes' cell phone. This search was performed using a list of discreet search terms provided by Plaintiff. Each of the responsive documents yielded in the ESI expert's search have been provided to Plaintiff in compliance with the Feb. 1, 2024 Order of Court (Doc. 46). Plaintiff now seeks sanctions based on purported delay and the volume of documents yielded in the ESI expert's search.

Plaintiff's delay argument is baseless. From the outset, the Feb. 1, 2024 Order of Court ordered that Defendants "engage in a further search for documents responsive to the plaintiff's request for documents…" (Doc. 46). Defendants did exactly that and hired an ESI expert to perform the search with terms provided by Plaintiff. Plaintiff's counsel knew this search was ongoing. What Plaintiff's counsel appears to suggest is that there should have been additional, intervening production of documents (to the extent they exist) relating to communications between Bon Ton and its customers on the three constructed homes at issue. But it was because undersigned counsel recognized a need to ensure that there would be no "missing" documents, and no situation a la the identification of Mr. Fetters in which Plaintiff's counsel could yet again hurl accusations of obstruction, spoliation and all manner of unethical conduct, that a third-party expert be retained to conduct the search. The Defendants would no longer

be the gatekeeper for production; rather, a recognized expert would take charge, implement the Plaintiffs' requested search terms and satisfy all that whatever existed had been produced. This is the definition of good faith, and yet it has yielded simply another version of Plaintiff's counsel insinuating wrongdoing.

Plaintiff's argument concerning the volume of documents produced is both meritless and disingenuous. Many – likely the vast majority -- of the 50,000 pages of documents produced have no bearing on the instant lawsuit. (Consider how many emails over a five-year period to an identified employee's email address will have nothing to do with the parties' dispute. But they will be encompassed within the search results.) However, they were pulled based on the search terms provided by Plaintiff. Indeed, after counsel in the Gardner action wrote an indignant email to undersigned counsel, threatening sanctions not only against Defendants but also counsel for alleged bad faith conduct due to the volume of documents produced, undersigned counsel reminded him that the amount of documents was a function of the search terms and that most would not be relevant. Undersigned counsel also requested that Plaintiffs' counsel provide an acceptable framework by which they would accept Defendants' counsel or expert acting as a gatekeeper to winnow out "irrelevant" material. Perhaps in a case where Plaintiff's counsel had not accused undersigned counsel and his clients of engaging in unethical conduct in likely a dozen different emails and court filings (which exceeds, by a lot, the number of times such claims have been lodged against undersigned counsel during the entirety of his 24-year career in litigation), such an arrangement could have been made. In this case, that was not feasible and so, erring on the side of abundant caution and unimpeachable full disclosure (one thought) and an

11

overriding goal to avoid more motions practice, Defendants produced every document to Plaintiff. Which is now – one wishes one could say surprisingly, but the rules of engagement here have been unwavering -- the cause of more gnashing of teeth.  The Court should reject out of hand Plaintiff's request for sanctions, and give strong consideration to awarding attorney's fees to Defendants for having to expend time and money responding to a completely unnecessary motion which regurgitates the same arguments presented to Judge Bloom with the aggravating factor that Plaintiff's counsel knew when this motion was filed: 1) he and his client would be receiving an exhaustive production using his own search terms; 2) that he had made no effort to conduct the discovery Judge Bloom ordered as a necessary prerequisite to the resolution of any claims of spoliation; 3) that by virtue of the search terms used, it was inevitable that a massive volume of irrelevant documents (but within the ambit of the search) would be generated; 4) as it relates to Plaintiff's discovery requests, those had been answered multiple times, both as interrogatory responses and two separate answers to RFA's and revised RFA's that spelled out the precise basis for Defendants' denials.

In conclusion, there is no colorable argument that Defendants' responses to Plaintiff's Request for Production of Documents are deficient or that somehow Defendants are hiding records. Defendants' responses are substantially justified and no sanctions are warranted, save for an award of fees to Defendants for having to expend time and money as part of a Groundhog Day exercise which was totally unnecessary in light of circumstances set forth herein.

WHEREFORE, Defendants, Bon Ton Builders, Inc. and Tony R. Forbes, respectfully request that Plaintiff's Motion to Compel and For Sanctions be denied and,

further, that the Court award Defendants their reasonable attorney's fees in responding to Plaintiff's motion.

                                              Respectfully submitted,

                                              JOHNSON, DUFFIE, STEWART & WEIDNER

                                              By: _____
                                                   Anthony T. Lucido, Esquire
                                                   Attorney I D No. 76583
                                                   301 Market Street - P O Box 109
                                                   Lemoyne, PA  17043
                                                   (717) 761-4540
                                                   alucido@johnsonduffie.com
                                                   Counsel for Defendants

DATE:  April 11, 2024
:1628734

## **CERTIFICATE OF SERVICE**

**AND NOW,** this 11th day of April 2024, the undersigned does hereby certify that she did this date serve a copy of the foregoing *Brief in Opposition to Plaintiff's Motion to Compel and For Sanctions* upon the other parties of record by e-filing through the United States District Court for the Middle District of Pennsylvania e-filing system.

JOHNSON, DUFFIE, STEWART & WEIDNER

By: /s/ Carleen Jensen
Carleen Jensen, Legal Assistant to
Anthony T. Lucido, Esquire